**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

KPA PROMOTIONS & AWARDS, INC.
and ABOVE & BEYOND PRESCHOOL,
LLC, Individually and on Behalf of All
Others Similarly Situated,

                            Plaintiffs,


            - against -

JPMORGAN CHASE & CO. and
JPMORGAN CHASE BANK, N.A.,

                            Defendants.

Civil Action No. 1:20-CV-3910

Hon. Naomi Reice Buchwald


**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF
JPMORGAN CHASE & CO.'S AND JPMORGAN CHASE BANK, NA.'S
MOTION TO COMPEL ARBITRATION AND STAY THIS ACTION**

GREENBERG TRAURIG, LLP
MetLife Building
200 Park Avenue
New York, New York 10166
Tel: (212) 801-9200
Fax: (212) 801-6400

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ....................................................................................... 1

BACKGROUND ............................................................................................................. 3

      A.    Plaintiffs Agreed To The DAA ..................................................................... 3

      B.    The DAA Contains A Binding Arbitration Provision ................................... 5

      C.    Plaintiffs Agreed To The Online Agreement ............................................... 7

      D.    The Online Agreement Contains A Binding Arbitration Provision ............. 8

      E.    Plaintiffs Used Their Status As Chase Accountholders To Apply For
             PPP Funding With Chase, Using Chase's Online Service ......................... 9

      F.    Plaintiffs' Claims Are Within The Scope Of The Arbitration Provisions. ........... 10

ARGUMENT ................................................................................................................. 11

I.      THIS COURT SHOULD COMPEL ARBITRATION OF PLAINTIFF'S CLAIMS
         PURSUANT TO THE DAA AND ONLINE AGREEMENT ......................... 11

      A.    Both Plaintiffs Entered Into Valid Agreements To Arbitrate .................... 13

            1.  Plaintiffs Assented To The DAA ................................................... 15

            2.  Plaintiffs Also Assented To The Online Agreement ...................... 16

      B.    The DAA And Online Agreement Delegate Questions Of Scope And
             Enforceability To The Arbitrator ................................................................ 18

      C.    Even If The Court Reaches The Issue Of Scope, Plaintiffs' Claims
             Are Covered .............................................................................................. 20

II.     THIS ACTION SHOULD BE STAYED PENDING ARBITRATION ........................... 23

CONCLUSION .............................................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abeona Therapeutics, Inc. v. EB Research P'ship*,
No. 18-CV-10889, 2019 WL 623864 (S.D.N.Y. Feb. 14, 2019)............................................14

*Alderson v. deVere USA, Inc.*,
No. 18-CV-5081, 2018 WL 3756451 (S.D.N.Y. July 24, 2018)............................................19

*Alghanim v. Alghanim*,
828 F. Supp. 2d 636 (S.D.N.Y. 2011)..........................................................................20, 21, 23

*Anonymous v. JP Morgan Chase & Co.*,
05-CV-2442, 2005 WL 2861589 (S.D.N.Y. Oct. 31, 2005)..................................................16

*Arshad v. Transp. Sys.*,
183 F. Supp. 3d 442 (S.D.N.Y. 2016)...............................................................12, 13, 18, 23

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011).............................................................................................................12

*AT&T Techs. v. Commc'ns Workers*,
475 U.S. 643 (1986).............................................................................................................20

*Bethune v. LendingClub Corp.*,
No. 16-CV-2578, 2017 WL 462287 (S.D.N.Y. Jan. 30, 2017) .........................................19, 23

*Contec Corp. v. Remote Sol. Co.*,
398 F.3d 205 (2d Cir. 2005)..................................................................................................11

*Corbin v. Affiliated Comput. Servs.*,
No. 13-CV-180, 2013 WL 3804862 (M.D. Fla. July 19, 2013) ............................................14

*Dill v. JPMorgan Chase Bank, N.A.*,
No. 19-CV-10947, 2020 WL 4345755 (S.D.N.Y. July 29, 2020) ................................... *passim*

*Emilio v. Sprint Spectrum L.P.*,
508 F. App'x 3 (2d Cir. 2013) ...............................................................................................19

*Gaul v. Chrysler Fin. Servs. Ams. LLC*,
657 F. App'x 16 (2d Cir. 2016)...............................................................................................21

*Getz v. Verizon Communs., Inc.*,
No. 18-CV-4652, 2018 WL 5276426 (S.D.N.Y. Oct. 24, 2018)............................................21

*Glasswall, LLC v. Monadnock Constr., Inc.*,
   187 So. 3d 248 (Fla. 3d Dist. Ct. App. 2016) .......................................................19

*Haenel v. Wash. Mut. Bank*,
   No. 07-CV-2320, 2007 WL 4326828 (E.D.N.Y. Dec. 6, 2007) ............................21

*Hancock v. AT&T Co.*,
   701 F.3d 1248 (10th Cir. 2012) ....................................................................17, 18

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019) .......................................................................................18

*Hidalgo v. Amateur Ath. Union of the United States, Inc.*,
   No. 19-CV-10545, 2020 WL 3442029 (S.D.N.Y. June 24, 2020) .........................17

*Johnson v. JPMorgan Chase Bank, N.A.*,
   No. 17-CV-2477, 2018 WL 4726042 (C.D. Cal. Sept. 18, 2018) ....................15, 23

*Katz v. Cellco P'ship*,
   794 F.3d 341 (2d Cir. 2015).................................................................................23

*Komitor v. MAG Motors III, Inc.*,
   No. 17-CV-61215, 2018 WL 1702194 (S.D. Fla. Mar. 26, 2018)..........................14

*Mallh v. Showtime Networks Inc.*,
   No. 17-CV-6549, 2017 WL 5157247 (S.D.N.Y. Nov. 7, 2017)..............................18

*Manigault v. Macy's E., LLC*,
   318 F. App'x 6 (2d Cir. 2009) .............................................................................13

*MetroPCS Communs., Inc. v. Porter*,
   273 So. 3d 1025 (Fla. Dist. Ct. App. 2018) ..........................................................17

*Meyer v. Uber Techs., Inc.*,
   868 F.3d 66 (2d Cir. 2017)............................................................................13, 17

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983)................................................................................................20

*National Union Fire Ins. Co. v. Champps Entm't, Inc.*,
   No. 04-CV-6163, 2004 WL 2884304 (S.D.N.Y. Dec. 13, 2004) ....................20, 21

*Novak v. JP Morgan Chase Bank, NA*,
   No. 06-CV-14862, 2008 WL 907380 (E.D. Mich. Mar. 31, 2008) ........................16

*Pelligrino v. Morgan Stanley Smith Barney LLC*,
   No. 17-CV-7865, 2018 WL 2452768 (S.D.N.Y. May 31, 2018) ............................16

*Plazza v. Airbnb, Inc.*,
    289 F. Supp. 3d 537 (S.D.N.Y. 2018)................................................................18

*Reunion W. Dev. Partners, LLLP v. Afranio Sanford Guimaraes*,
    221 So. 3d 1278 (Fla. 5th Dist. Ct. App. 2017) ..........................................19

*Rollins v. Goldman Sachs & Co. LLC*,
    No. 18-CV-7162, 2019 WL 2754635 (S.D.N.Y. July 2, 2019).............................14

*Sanchez v. J.P. Morgan Chase Bank, N.A.*,
    No. 14-CV-20468, 2014 WL 4063046 (S.D. Fla. Aug. 15, 2014) .........................16

*Scott v. JPMorgan Chase & Co.*,
    603 F. App'x 33 (2d Cir. 2015) ................................................................12

*Scott v. JPMorgan Chase Bank, N.A.*,
    No. 13-CV-646, 2014 WL 338753 ......................................................2, 15

*Shea v. BBVA Compass Bancshares, Inc.*,
    No. 12-CV-23324, 2013 WL 869526 (S.D. Fla. Mar. 7, 2013).............................19

*Sultan v. Coinbase*,
    354 F. Supp. 3d 156 (E.D.N.Y. 2019) ......................................................18

*Sunmonu v. Chase Bank, N.A.*,
    No. 18-CV-1695, 2019 WL 1258788 (D. Md. Mar. 19, 2019) .........................15, 21

*Tinsley v JP Morgan Chase Bank, N.A.*,
    No. 158381/2013, 2014 WL 5490608 (Sup. Ct. N.Y. Cnty. Oct. 31, 2014) ...........16

*United States v. Bank of Am.*,
    No. 06-CV-711A, 2009 WL 2009022 (W.D.N.Y. Feb. 20, 2009) .........................15

*Watson v. USA Today Sports Media Grp.*,
    LLC, No. 17-CV-7098, 2018 WL 2316634 (S.D.N.Y. May 8, 2018).............................21, 23

*Whitt v. Prosper Funding LLC*,
    No. 15-CV-136, 2015 WL 4254062 (S.D.N.Y. July 14, 2015).............................18

*Worthington v. JetSmarter, Inc.*,
    No. 18-CV-12113, 2019 WL 4933635 (S.D.N.Y. Oct. 7, 2019)..........................13, 14, 17, 18

## Statutes

9 U.S.C. § 2.....................................................................................12

9 U.S.C. § 3.....................................................................................23

**Other Authorities**

*AAA Com. Arb. Rules & Mediation Proc.*, https://www.adr.org/sites/default/files/
    CommercialRules_Web.pdf.................................................................................19

CHASE FOR BUSINESS, *Paycheck Protection Program FAQs and Useful Tips*,
    https://recovery.chase.com/cares1/ppp-faqs (last visited Sept. 25, 2020) ...............................2

*JAMS Comprehensive Arb. Rules & Proc.*, JAMSADR.com (July 1, 2014),
    https://www.jamsadr.com/rules-comprehensive-arbitration/#Rule-11...................................19

Pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* ("FAA"), Defendant JPMorgan Chase Bank, N.A. ("Chase") and Specially Appearing Defendant JPMorgan Chase & Co.[1] (together, "Defendants") move for an order (i) compelling Plaintiffs KPA Promotions & Awards, Inc. ("KPA") and Above & Beyond Preschool, LLC ("A&B") (together with KPA, "Plaintiffs") to separately arbitrate their claims against Chase on an individual basis pursuant to binding arbitration provisions, and (ii) staying these proceedings until each of the separate arbitrations is complete (the "Motion").[2]

## PRELIMINARY STATEMENT

Both KPA and A&B are business banking deposit accountholders and customers of Chase who allege that they submitted PPP loan applications to Chase in April 2020.  *See* Compl. ¶¶ 50, 68 (alleging that Chase is each Plaintiff's "regular business bank").  While KPA alleges that it obtained a PPP loan from Chase and A&B alleges that it did not, both Plaintiffs allege that Chase "ignored the equitable and critical guideline that loans would be processed on a 'first come, first served' basis as required by the PPP."  *Id.* ¶ 5.  KPA and A&B's claims lack merit, but that point aside, Plaintiffs' claims do not belong in court because Plaintiffs agreed to separately arbitrate them.

Both Plaintiffs have deposit accounts with Chase, and when opening their Chase accounts, they each assented to Chase's Deposit Account Agreement (the "DAA"), including its binding

---

[1]  Defendant JPMorgan Chase & Co. is a financial holding company under section 4(k) and (l) of the Bank Holding Company Act of 1956.  It is not a proper defendant, as it does not participate, and never has participated, in the Paycheck Protection Program ("PPP") which was created as part of the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. 116-136, and has made no loans in connection with the PPP.  This specially appearing Defendant reserves all rights in connection with being named in the Complaint.

[2] On September 17, 2020, the Court so-ordered the parties' September 11, 2020 letter in which Chase requested leave to file this Motion and the parties jointly requested that Chase's deadline to answer or otherwise respond to the Complaint be continued until 35 days after a ruling on the Motion.  Rec. Doc. 33.  Chase hereby reserves all rights and defenses it may have with respect to the pleading and merits of Plaintiffs' claims.

arbitration provision.[3] Also, before applying for PPP loans with Chase, both Plaintiffs agreed to Chase's Online Services Agreement (the "Online Agreement"), which likewise contains an arbitration provision.

Both agreements—the DAA and the Online Agreement—require Plaintiffs to individually arbitrate their claims.  The agreements further delegate any scope and enforceability questions to the arbitrator.  Thus, once the Court finds that an agreement to arbitrate exists, the Court has nothing more to do other than grant this Motion and compel Plaintiffs to arbitrate their claims.

Even if the Court were to take that additional step and determine whether Plaintiffs' claims are covered by the DAA and Online Agreement (which it need not and should not do), Plaintiffs must still be compelled to arbitrate.  The DAA broadly requires arbitration of all claims arising out of or related to the DAA or Plaintiffs' Chase accounts.  KPA concedes that the PPP loan it complains of was approved by Chase and that "the funds were deposited into Plaintiff KPA's account on April 30, 2020."  Compl.  ¶ 56.  Had A&B's loan applications not been denied but rather approved, *see id.* ¶¶ 69-70, PPP loan funds would have similarly been deposited into its checking account at Chase, and A&B's alleged injury is the failure to receive PPP loan funds into its account.  Neither Plaintiff disputes that they were required to have active Chase deposit accounts in order to apply for a PPP loan with Chase.[4]

The result is also the same under the Online Agreement's arbitration provision, which is also broad, and requires arbitration of all claims arising out of or relating to any online service

---

[3] Courts in this District, other federal districts, and New York state courts have repeatedly held that this same arbitration provision is valid, enforceable, and requires claims or disputes with Chase to be compelled to arbitration. *See, e.g.*, *Dill v. JPMorgan Chase Bank, N.A.*, No. 19-CV-10947, 2020 WL 4345755 (S.D.N.Y. July 29, 2020); *Scott v. JPMorgan Chase Bank, N.A.*, No. 13-CV-646, 2014 WL 338753, *aff'd* 603 F. App'x 33 (2d Cir. 2015) (both compelling arbitration under DAA); *see also infra* at 15-16.

[4] *See* Declaration of Sarah Pate Reynolds ("Reynolds Decl.") ¶ 4 (filed herewith); CHASE FOR BUSINESS, *Paycheck Protection Program FAQs and Useful Tips*, https://recovery.chase.com/cares1/ppp-faqs (last visited Sept. 25, 2020) ("PPP FAQ's") (Q. "If I have another account with Chase but not a business checking account, can I still apply?" A. "No, you must have an active Chase Business checking account that was opened since February 15, 2020.").

provided by Chase.  Plaintiffs confirm in the Complaint that they submitted their PPP loan applications using Chase's online service.  *See id.* ¶¶ 48-51, 68 (alleging that PPP applications were submitted online and subsequent communications received from Chase were electronic).  Therefore, both the DAA and Online Agreement encompass KPA's and A&B's claims in this action, which hinge on each of them being a Chase deposit account holder that (1) sought to obtain a PPP loan through Chase by filling out an online application, (2) purportedly relied on its status as a Chase account holder and its existing Chase relationship for the loan, (3) was required to have a Chase business banking checking account to even apply for a PPP loan through Chase, and (4) was allegedly injured, either because it received a loan through Chase but that deposit into its account was "backdated" (as alleged by KPA) or because its applications to Chase for a PPP loan were denied and thus no loan was obtained though Chase into its account quickly enough during the first round of PPP funding (as alleged by A&B).

In sum, Plaintiffs agreed to two agreements (the DAA and Online Agreement) that require individual arbitration.  All issues of scope and enforceability are for the arbitrator, but even if this Court were to address that issue, the arbitration provisions are broad and clearly cover Plaintiffs' claims.  The Court should grant this Motion, compel arbitration, and stay further proceedings pending completion of arbitration.

## BACKGROUND

### A.    Plaintiffs Agreed To The DAA

Plaintiffs are two businesses primarily located in Florida, and both maintain deposit accounts with Chase, their "regular business bank."  *See* Compl. ¶¶ 13-14, 50 (KPA), 68 (A&B).  Although Plaintiffs opened their respective Chase accounts at different times, each account was, and remains, subject to Chase's DAA.  Declaration of Laura L. Deck ("Deck Decl.") ¶ 3 (filed

herewith).

On August 29, 2013, KPA opened an account with Chase (ending in 2195).  When opening its account ending in 2195, KPA's representatives confirmed assent to the DAA by signing a Business Signature Card, affirming that:

> By signing this Signature Card … [t]he Depositor acknowledges receipt of [Chase] Bank's Deposit Account Agreement or other applicable account agreement, which include all provisions that apply to this deposit account, and other agreements and service terms for account analysis and other treasury management services if applicable, and agree to be bound by the terms and conditions contained therein as amended from time to time.

Declaration of Ian F. Fidler ("Fidler Decl.") ¶¶ 2, 5 & Ex. A (filed herewith).

On April 27, 2016, KPA also opened a second account with Chase (ending in 1982).  As it did in opening its first account, KPA's representatives signed a signature card that contained an identical acknowledgment of receipt of, and agreement to be bound by, the DAA.  *Id.* ¶ 3 & Ex. B.

On July 14, 2018, A&B opened an account with Chase (ending in 7061). When opening its account ending in 7061, A&B's representatives confirmed assent to the DAA by signing a signature card and expressly acknowledging receipt of, and agreement to, the terms of the DAA. Declaration of Sita Ragbir ("Ragbir Decl.") ¶¶ 2-3 & Ex. A (filed herewith).

The DAA plainly confirms that it is the contract that governs Plaintiffs' business accounts:

> Whether you have a personal or business deposit account, this document is the basic agreement between you and us (JPMorgan Chase Bank, N.A. or "Chase").  By signing a signature card or submitting an account application, or by using any of our deposit account services, you and anyone else identified as an owner of the account agree to the terms in this agreement.

Deck Decl. Ex. D at 5.[5]

Chase notified KPA and A&B in writing of subsequent updates to the DAA, in accordance

---

[5] Quotations herein to the DAA refer to the version of the DAA that was in effect when Plaintiffs filed their Complaint on May 19, 2020.  Deck Decl. ¶ 8 & Ex. D.

with its terms.  Deck Decl. ¶ 7.  In addition, every monthly account statement sent by Chase to Plaintiffs contained language expressly stating that Plaintiffs' accounts are governed by the currently effective DAA.  *Id.* ¶ 11.

**B.**      **The DAA Contains A Binding Arbitration Provision**

The DAA provides that disputes between Plaintiffs and Chase are subject to mandatory arbitration under the FAA:

> You and we agree that upon the election of either of us, ***any dispute relating in any way*** to your account or transactions will be resolved by binding arbitration as discussed below, and not through litigation in any court (except for matters in small claims court).
>
> This arbitration agreement is entered into pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA").

Deck Decl. Ex. D at 23 (emphasis added).

The arbitration provision broadly covers any claims or disputes arising from or related to the DAA, as well as those arising from or relating to Plaintiffs' accounts, transactions, or related services:

> **What claims or disputes are subject to arbitration?**
>
> Claims or disputes between you and us about your deposit account, transactions involving your deposit account, safe deposit box, and any related service with us are subject to arbitration.  Any claims or disputes arising from or relating to this agreement, any prior account agreement between us, or the advertising, the application for, or the approval or establishment of your account are also included. Claims are subject to arbitration, regardless of what theory they are based on or whether they seek legal or equitable remedies.  Arbitration applies to any and all such claims or disputes, whether they arose in the past, may currently exist or may arise in the future.  All such claims or disputes are referred to in this section as "Claims."

*Id.* at 24.

The DAA also outlines the procedures that will govern any arbitration, including (1) how arbitration works, (2) the applicable rules, (3) the extent to which Chase will reimburse Plaintiffs

for the costs of arbitration, and (4) how to initiate a claim.  *Id.* at 23-24.

Notably, the DAA permitted Plaintiffs to "opt out" of arbitration by notifying Chase of such election within 60 days of opening their accounts:

> YOU HAVE A RIGHT TO OPT OUT OF THIS AGREEMENT TO ARBITRATE, AS DISCUSSED BELOW.  UNLESS YOU OPT OUT OF ARBITRATION, YOU AND WE ARE WAIVING THE RIGHT TO HAVE OUR DISPUTE HEARD BEFORE A JUDGE OR JURY, OR OTHERWISE TO BE DECIDED BY A COURT OR GOVERNMENT TRIBUNAL.
>
> . . .
>
> **Can I (customer) cancel or opt out of this agreement to arbitrate?**
>
> You have the right to opt out of this agreement to arbitrate if you tell us within 60 days of opening your account.  If you want to opt out, call us at 1-800-935-9935 or see a banker.  Otherwise this agreement to arbitrate will apply without limitation, regardless of whether 1) your account is closed; 2) you pay us in full any outstanding debt you owe; or 3) you file for bankruptcy.

*Id.* at 23-24 (emphasis and capital letters in original).  Despite having the choice to opt out of the arbitration agreement by calling a toll-free number or speaking to a Chase banker, neither KPA nor A&B opted out.  Declaration of William A. Garrett ("Garrett Decl.") ¶¶ 2-3 (filed herewith).

The DAA also requires Plaintiffs' claims to be resolved by arbitration on an individual basis, and precludes any class litigation:

> YOU AND WE ALSO WAIVE ANY ABILITY TO ASSERT OR PARTICIPATE IN A CLASS OR REPRESENTATIVE BASIS IN COURT OR IN ARBITRATION.  ALL DISPUTES, EXCEPT AS STATED BELOW, MUST BE RESOLVED BY BINDING ARBITRATION WHEN EITHER YOU OR WE REQUEST IT.
>
> . . .
>
> **What about class actions or representative actions?**
>
> Claims in arbitration will proceed on an individual basis, on behalf of the named parties only.  YOU AND WE AGREE NOT TO:
>
> 1. SEEK TO PROCEED ON ANY CLAIM IN ARBITRATION AS A CLASS CLAIM OR CLASS ACTION OR OTHER COMPARABLE REPRESENTATIVE PROCEEDING;

2. SEEK TO CONSOLIDATE IN ARBITRATION ANY CLAIMS INVOLVING SEPARATE CLAIMANTS (EXCEPT FOR CLAIMANTS WHO ARE ON THE SAME ACCOUNT), UNLESS ALL PARTIES AGREE;

3. BE PART OF, OR BE REPRESENTED IN, ANY CLASS ACTION OR OTHER REPRESENTATIVE ACTION BROUGHT BY ANYONE ELSE; NOR

4. SEEK ANY AWARD OR REMEDY IN ARBITRATION AGAINST OR ON BEHALF OF ANYONE WHO IS NOT A NAMED PARTY TO THE ARBITRATION.

Deck Decl. Ex. C at 23-24 (emphasis and capital letters in original).

**C.    Plaintiffs Agreed To The Online Agreement**

In addition, Plaintiffs also agreed to arbitrate disputes with Chase when they accepted the Online Agreement.  KPA confirmed its acceptance of the Online Agreement on October 30, 2015, when the unique Chase User ID associated with KPA's business accounts affirmatively clicked boxes acknowledging that it had read and accepted the Online Agreement.  *See* Declaration of Nicholas Sergi ("Sergi Decl.") ¶ 3 (filed herewith).  Identically, A&B confirmed its acceptance of the Online Agreement on July 14, 2018, when the unique Chase User ID associated with A&B's business account affirmatively clicked boxes acknowledging that it had read and accepted the Online Agreement.  *Id.* ¶ 4.[6]

Plaintiffs each re-confirmed their acceptance of the Online Agreement each time they used Chase's online banking services by logging into Chase's online system under their respective User IDs and passwords, *id.* Ex. C § 2, and when they utilized Chase's "online portals" to apply for PPP funding through Chase.  *See* Compl. ¶¶ 6, 42, 48, 59, 67-68.

---

[6] Chase updates the Online Agreement from time to time.  When it does so, and Chase provides notice of updates to customers such as KPA and A&B, it does so as set forth in the Online Agreement.  Sergi Decl.  ¶ 5.

**D.**     <u>**The Online Agreement Contains A Binding Arbitration Provision**</u>

By its terms, the Online Agreement in effect at the time Plaintiffs filed this lawsuit applies

to any of Chase's "Online Services":

> This Online Service Agreement ("Agreement") states the terms and conditions that govern your use of Chase Online℠, Chase Mobile®, Chase Pay®, Chase Online for Business Banking, and J.P. Morgan Online and any applicable software products and associated documentation we may provide through those websites and mobile applications, ***or to use the products, services or functionality offered through those websites and mobile applications***, ("Software") and certain third party digital platforms as determined by us from time to time (collectively, the "Online Service").

Sergi Decl. Ex. C § 1 (emphasis added).   The Online Agreement broadly requires individual

arbitration of any dispute relating in any way to the Online Agreement itself or to any Chase Online

Service:

> **YOU HEREBY AGREE THAT ANY DISPUTE, CLAIM OR CONTROVERSY ARISING NOW OR IN THE FUTURE UNDER OR RELATING IN ANY WAY TO THIS AGREEMENT, OR TO THE ONLINE SERVICE ("CLAIM"), REGARDLESS OF THE NATURE OF THE CAUSE(S) OF ACTION ASSERTED (INCLUDING CLAIMS FOR INJUNCTIVE, DECLARATORY, OR EQUITABLE RELIEF), SHALL BE RESOLVED BY BINDING ARBITRATION. CLAIMS SUBJECT TO ARBITRATION INCLUDE CLAIMS THAT ARE MADE AS COUNTERCLAIMS, CROSS CLAIMS, THIRD PARTY CLAIMS, INTERPLEADERS, OR OTHERWISE. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, AND YOU THEREFORE AGREE TO WAIVE ANY RIGHT THAT YOU OR WE MIGHT OTHERWISE HAVE HAD TO A JURY TRIAL OR THE OPPORTUNITY TO LITIGATE ANY CLAIMS IN COURT BEFORE EITHER A JUDGE OR A JURY. YOU FURTHER AGREE THAT YOU WILL NOT BE ABLE TO BRING A CLASS ACTION OR OTHER REPRESENTATIVE ACTION … TO LITIGATE ANY CLAIMS IN COURT BEFORE EITHER A JUDGE OR JURY; NOR WILL YOU BE ABLE TO PARTICIPATE AS A CLASS MEMBER IN A CLASS ACTION OR OTHER REPRESENTATIVE ACTION IN ARBITRATION OR IN COURT BEFORE EITHER A JUDGE OR JURY.  IF THE PRECEDING SENTENCE IS NOT ENFORCED FOR ANY REASON, THEN YOU AGREE THAT IN SUCH CASE ANY CLASS DISPUTE WILL NOT BE RESOLVED THROUGH ARBITRATION.**

*Id.* § 12 (emphasis and capital letters in original).   The Online Agreement explains that "[t]his

8

binding arbitration provision applies to any and all Claims that you have against us, our parent, subsidiaries, [or] affiliates," among others, and that "[i]t also includes **any and all Claims regarding the applicability of this arbitration clause** or the validity of the Agreement, in whole or in part." *Id.* (emphasis added).[7]

### E. Plaintiffs Used Their Status As Chase Accountholders To Apply For PPP Funding With Chase, Using Chase's Online Service

Chase business customers had to have an existing Chase business account to apply for a PPP loan through Chase. *See* Reynolds Decl. ¶ 4; PPP FAQ's.  Based on their status as Chase accountholders who used Chase as their "regular business bank," KPA and A&B applied for PPP funding with Chase.  *See* Compl. ¶¶ 50, 68.

Per Plaintiffs' Complaint, Plaintiffs applied for PPP funding using an "online portal" established and administered by Chase for that purpose.  *See Id.* ¶¶ 6, 42, 48, 59, 67-68.  At the time each Plaintiff applied for such loans, Chase's digital application stated that PPP loans would be deposited directly into their Chase business checking accounts.  *See* Reynolds Decl. ¶¶ 2-3. Consistent with this provision, when KPA's PPP loan application was approved on April 30, 2020, Chase "deposited loan funds into [] KPA's account."  Compl. ¶ 54.  A&B, in contrast, applied to Chase twice for PPP funding, but both applications were denied by Chase.  *Id.* ¶¶ 69-70. Nonetheless, had either of A&B's PPP loan applications been approved by Chase, the funds would have been deposited directly into A&B's Chase account, as was done with KPA.  *See* Reynolds

---

[7] In agreeing to and accepting the Online Agreement, Plaintiffs each also re-confirmed their agreement to all other written contracts governing their respective Chase accounts, including the DAA:

> In addition to this Agreement, you agree to be bound by and comply with such other written requirements as we may furnish to you in connection with either this service or products which may be accessed via this service, including, but not limited to, ***all account agreements***, end user license agreements, and with all applicable State and Federal laws and regulations.

*Id.* § 9 (emphasis added).

Decl. ¶ 3.  Moreover, A&B's status as a Chase accountholder enabled it to apply for a PPP loan through Chase.  *See id.* ¶ 4; PPP FAQ's.  Plaintiffs further allege in their Complaint that they received electronic communications from Chase both prior to and following the submission of their online PPP loan applications.  *See* Compl. ¶¶ 48-49, 51-54 (KPA), 67-70 (A&B).

**F.**  **Plaintiffs' Claims Are Within The Scope Of The Arbitration Provisions**.

With the DAA and Online Agreement in place, Plaintiffs filed this action against Chase, asserting claims relating to Plaintiffs' applications for PPP loans from Chase.  Based on the conclusory assertion that Chase "prioritized the processing of larger loans over smaller loans" like their own, Compl. ¶ 5, Plaintiffs plead claims against Chase for purported violations of New York and Florida consumer protection statutes, fraudulent concealment, breach of fiduciary duty, and negligence.  *See id.* ¶¶ 98-150.  KPA (who obtained PPP funding) also asserts claims relating to its receipt of a PPP loan, contending, among other things, that the deposit into its Chase account was "backdated," *id.* ¶ 56, and that Chase "set up automatic repayment of the PPP loan to be paid from [] KPA's account" without permission.  *Id.* ¶ 57.

Plaintiffs purport to bring their claims on behalf of a putative nationwide class of other businesses that applied for loans under the PPP with Chase "and whose applications were not processed by Defendants in accordance with SBA regulations and requirements or New York law," *id.* ¶ 84, as well as several proposed subclasses: a Florida sub-class, a sub-class of those who received PPP loan funding but whose "funding was backdated and did not reflect the actual date funds were provided," and a sub-class of those located or headquartered in Florida who received PPP loan funding but whose funding was purportedly backdated.  *See id.* ¶¶ 85-87.

But, under the DAA, Plaintiffs agreed to individually arbitrate "any dispute relating in any way to [their] accounts or transactions … by binding arbitration and not through litigation in any

court." Deck. Decl. Ex. D at 23.  Similarly, Plaintiffs also agreed, through the Online Agreement's arbitration provision, to individually arbitrate all claims "under or relating in any way" to the Online Agreement or "to the Online Service."  Sergi. Decl. Ex. C § 12 (capital letters omitted). Plaintiffs concede that they applied for PPP loans with Chase because of their existing accounts, *see* Compl. ¶¶ 50, 68, and in fact would not have been able to so apply had they not had an active Chase business checking account.  Reynolds Decl. ¶ 4; PPP FAQs.  Further, both Plaintiffs concede in their Complaint they applied for and communicated electronically about the PPP loan application.  *See* Compl. ¶¶ 6, 42, 48, 59, 67-68.  Plaintiffs thus cannot dispute that the Chase PPP loan application transaction and any subsequent deposit of funds had to involve, and occurred only because of, their respective Chase business checking accounts and by means of a Chase online service.

**ARGUMENT**

## I.    THIS COURT SHOULD COMPEL ARBITRATION OF PLAINTIFF'S CLAIMS PURSUANT TO THE DAA AND ONLINE AGREEMENT

It is well-settled that "the FAA applies in federal court to diversity suits which relate to contracts involving interstate or international commerce."  *Contec Corp. v. Remote Sol. Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (internal quotation marks and citation omitted) (affirming dismissal of action in favor of arbitration).  Here, there can be no dispute that the FAA governs this Motion, insofar as (1) both Plaintiffs are allegedly residents of Florida, (2) Chase is a federally chartered bank and national banking association with its main office, as designated by its articles of association, in Columbus, Ohio (and its parent JPMorgan Chase & Co. is similarly not a resident of Florida), (3) the agreements at issue are those Chase has with all of its business banking clients, (4) the PPP was part of a nationwide emergency stimulus program, and (5) both of the relevant arbitration provisions expressly provide that the FAA governs.  *See* Deck Decl. Ex. D at 23 (DAA:

"This arbitration agreement is entered into pursuant to the Federal Arbitration Act"); Sergi Decl. Ex. C § 12 (Online Agreement: "This binding arbitration provision .... shall be governed by the Federal Arbitration Act"); *see also* Compl. ¶ 11 (pleading that "this Court has diversity jurisdiction because Plaintiffs … are citizens of states different than Defendants and because the amount in controversy exceeds the sum or value of $5,000,000").

Since the FAA applies to this dispute, this Court "'must rigorously enforce [the parties'] arbitration agreements according to their terms.'" *Arshad v. Transp. Sys.*, 183 F. Supp. 3d 442, 446 (S.D.N.Y. 2016) (Buchwald, J.) (observing Supreme Court precedent that the FAA "'reflects an emphatic federal policy in favor of arbitral dispute resolution'" and enforcing broad arbitration provision); 9 U.S.C. § 2 (providing that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (observing that Section 2 of the FAA "reflect[s] both a 'liberal federal policy favoring arbitration,' … and the 'fundamental principle that arbitration is a matter of contract'") (citations omitted).

In the Second Circuit, rigorous enforcement of an arbitration agreement means, among other things, that a court's analysis on a motion to compel arbitration is limited to a two-part inquiry: "(1) whether [the parties] have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *Scott v. JPMorgan Chase & Co.*, 603 F. App'x 33, 35 (2d Cir. 2015) (internal quotation marks and citation omitted) (affirming dismissal based on Chase's DAA).[8]  If the answer to both questions is yes, then the court is required to compel arbitration and stay the action.  *See* 9 U.S.C. §§ 2, 3.

---

[8] *Accord Daly*, 939 F.3d at 421 (articulating court's task as determining "(1) whether the parties agreed to arbitrate; (2) the scope of that agreement; and, (3) if federal statutory claims are asserted [not here applicable], … whether Congress intended those claims to be nonarbitrable") (internal quotation marks and citation omitted).

Importantly, the court need not reach the second inquiry where the parties' agreement delegates to the arbitrator the authority to resolve questions of scope, in which case the court must reserve that issue for arbitration as well.  *See Arshad*, 183 F. Supp. 3d at 446 (observing that parties may delegate scope questions to the arbitrator).

In rigorously enforcing an arbitration agreement, the court may "consider[] all relevant, admissible evidence submitted by the parties and contained in pleadings ... together with … affidavits." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (internal quotation marks and citation omitted) (reversing district court finding that parties had not agreed to arbitrate). Here, the evidence submitted by Chase establishes that both KPA and A&B agreed to not one, but *two* arbitration provisions, including in a customer agreement (the DAA) which has been repeatedly recognized by this District, other federal districts, and the New York state courts as valid and enforceable.  As both of these agreements delegate questions of scope and enforceability to the arbitrator, this Court's inquiry should end here.  However, if this Court does elect to address the second prong, Plaintiffs' claims are unquestionably covered by the arbitration clauses in the DAA and Online Agreement.  Plaintiffs should be compelled to separately arbitrate their claims against Chase.

## A.    Both Plaintiffs Entered Into Valid Agreements To Arbitrate

To resolve whether an agreement to arbitrate was formed, courts generally must "apply ordinary state-law principles that govern the formation of contracts." *Manigault v. Macy's E., LLC*, 318 F. App'x 6, 7 (2d Cir. 2009) (internal quotation marks and citation omitted) (remanding for entry of order compelling arbitration).  Here, regardless of whether New York or Florida law is applied, the Court should reach the same conclusion—Plaintiffs clearly entered into valid agreements to arbitrate.  *See Worthington v. JetSmarter, Inc.*, No. 18-CV-12113, 2019 WL 4933635, at *4 (S.D.N.Y. Oct. 7, 2019) (holding that "the Court need not decide which state's law

applies" to motion to compel arbitration "because the law of New York and Florida is substantially similar on the question of whether the parties have formed an agreement to arbitrate").

"Under both New York and Florida law, an arbitration agreement requires a manifestation of mutual assent to sufficiently definite contract terms." *Id.* A finding of mutual assent does not depend on the subjective intent of the parties, but rather on the terms of the contract and the familiar elements of offer, acceptance, and consideration.[9] *See Corbin v. Affiliated Comput. Servs.*, No. 13-CV-180, 2013 WL 3804862, at *3 (M.D. Fla. July 19, 2013) (granting motion to compel arbitration, observing that "[u]nder Florida law, the formation of an enforceable contract requires, an offer, acceptance, consideration, and sufficient specification of terms so that the obligations involved can be ascertained") (internal quotation marks and citations omitted); *Rollins v. Goldman Sachs & Co. LLC*, No. 18-CV-7162, 2019 WL 2754635 , at *6 (S.D.N.Y. July 2, 2019) (granting motion to compel arbitration, observing that "[t]o form a valid contract under New York law, there must be an offer, acceptance, consideration, mutual assent and intent to be bound," and that "[c]ourts can infer acceptance when the party demonstrated at least constructive knowledge of the terms through his actions") (internal quotation marks and citation omitted).

Here, Plaintiffs agreed to arbitrate the claims asserted in this case in multiple ways. First, Plaintiffs assented to the DAA's arbitration provision when they opened their Chase accounts, executed signature cards for these accounts and acknowledged receipt of the DAA. Second, Plaintiffs assented to the Online Agreement's arbitration provision when they affirmatively clicked separate boxes acknowledging that they had read and accepted the Online Agreement and when

---

[9] At minimum, mutual promises to arbitrate supply adequate consideration. *See Komitor v. MAG Motors III, Inc.*, No. 17-CV-61215, 2018 WL 1702194, at *1 (S.D. Fla. Mar. 26, 2018) (holding under Florida law that "it is well-settled that mutually binding promises to arbitrate provide consideration for one another, and give rise to an enforceable arbitration") (internal quotation marks and citation omitted); *Abeona Therapeutics, Inc. v. EB Research P'ship*, No. 18-CV-10889, 2019 WL 623864, at *4 (S.D.N.Y. Feb. 14, 2019) (same under New York law).

they utilized Chase's online portal and services to submit PPP loan applications.

### 1.    *Plaintiffs Assented To The DAA*

When Plaintiffs applied to open their respective Chase deposit accounts, they were offered services subject to the terms and conditions of the DAA, including its arbitration provision.  Each Plaintiff accepted Chase's offer by signing a Business Signature Card stating that they acknowledged receipt of and "agree to be bound by the terms and conditions" of the DAA.  *See* Fidler Decl. Exs. A-B; Sagbir Decl. Ex. A.

Courts routinely hold that signing a signature card when opening a bank account, like KPA and A&B did here, demonstrates assent.  *See, e.g.*, *United States v. Bank of Am.*, No. 06-CV-711A, 2009 WL 2009022, at *6 (W.D.N.Y. Feb. 20, 2009) (applying New York law, citing *David v. Mfrs. Hanover Tr. Co.*, 59 Misc. 2d 248, 248 (App. Term 2d Dep't 1969)) ("the terms set forth in [a] signature card executed by [a] plaintiff depositor and the statements of account which are referred to therein constitute[] a valid contract between the [] depositor and defendant bank").  In fact, numerous courts both in this District and in other federal districts across the country have enforced Chase DAA arbitration provisions where, as here, evidence was submitted that the depositors signed signature cards incorporating the DAA and/or received copies of the DAA.  *See, e.g.*, *Dill.*, 2020 WL 4345755, at *2 (evidence showed that plaintiffs executed signature cards acknowledging receipt of DAA); *Sunmonu v. Chase Bank, N.A.*, No. 18-CV-1695, 2019 WL 1258788, at *2 (D. Md. Mar. 19, 2019) (rejecting plaintiff's argument that "Chase Bank 'is able to prove … the existence of a valid and binding agreement between the parties'" where evidence included signed signature cards "indicating [plaintiff's] assent" to the DAA); *Johnson v. JPMorgan Chase Bank, N.A.*, No. 17-CV-2477, 2018 WL 4726042, at *3-4 (C.D. Cal. Sept. 18, 2018) (evidence was submitted that depositor signed signature card incorporating DAA); *Scott*, 2014 WL 338753, at *3

(evidence was submitted that depositor was provided DAA upon opening account), *aff'd*, 603 Fed. App'x 33 (2d Cir. 2015); *Tinsley v JP Morgan Chase Bank, N.A.*, No. 158381/2013, 2014 WL 5490608 (Sup. Ct. N.Y. Cnty. Oct. 31, 2014) (plaintiffs signed signature cards incorporating DAA); *Sanchez v. J.P. Morgan Chase Bank, N.A.*, No. 14-CV-20468, 2014 WL 4063046, at *2-3 (S.D. Fla. Aug. 15, 2014) (plaintiffs were provided copies of DAA); *Novak v. JP Morgan Chase Bank, NA*, No. 06-CV-14862, 2008 WL 907380, at *5 (E.D. Mich. Mar. 31, 2008) (evidence included a deposit agreement and signature card bearing plaintiff's signature).

Plaintiffs here further assented to the DAA's arbitration provision when—after receiving additional notices of the DAA on their monthly account statements, and when Chase updated the agreement, *see* Deck Decl. ¶¶ 7, 11—they continued to use their Chase accounts to make transactions (including, ultimately, to apply for PPP loans with Chase). *See Id.* Ex. D at 5 ("by using any of our deposit account services, you … agree to the terms in this agreement"); *Anonymous v. JP Morgan Chase & Co.*, 05-CV-2442, 2005 WL 2861589, at *4 (S.D.N.Y. Oct. 31, 2005) (holding that plaintiff entered into valid agreement to arbitrate based on "uncontested evidence that the plaintiff used [his] Chase card and made payments to Chase for that use for several months"). Moreover, Plaintiffs were each given an opportunity after opening their accounts to opt out of the DAA arbitration provision by either calling a toll-free number or by contacting a Chase banker. *See* Deck Decl. Ex. D at 23-24. They declined to do so, further signaling their assent. *See* Garrett Decl. ¶¶ 2-3; *Pelligrino v. Morgan Stanley Smith Barney LLC*, No. 17-CV-7865, 2018 WL 2452768, at *3 (S.D.N.Y. May 31, 2018) (a failure to opt-out "compel[s] the conclusion that Plaintiff[s] are bound by the Arbitration Agreement").

### 2.    *Plaintiffs Also Assented To The Online Agreement*

Plaintiffs also agreed to arbitrate their claims when they agreed to the Online Agreement.

Under both New York and Florida law, a plaintiff will be found to have assented to an arbitration provision in a web-based contract "where the notice of the arbitration provision was reasonably conspicuous and manifestation of assent unambiguous as a matter of law." *Meyer*, 868 F.3d at 76 (vacating order denying motion to compel arbitration);[10] *Hidalgo v. Amateur Ath. Union of the United States, Inc.*, No. 19-CV-10545, 2020 WL 3442029, at *4-9 (S.D.N.Y. June 24, 2020) (applying *Meyer* and enforcing arbitration provision governed by New York law).  Notice and assent are routinely found to exist where the online form prompts the user specifically to "agree" to the relevant terms and conditions by clicking a specific box or button to that effect and the user so complies.  As the Second Circuit noted in *Meyer*, "[c]ourts routinely uphold" online agreements where "the user has affirmatively assented to the terms of the agreement by clicking 'I agree'"— so-called "clickwrap agreements."   869 F.3d at 75; *Hidalgo*, 2020 WL 3442029, at *4 (same, applying New York law); *Worthington*, 2019 WL 4933635, at *4-5 (enforcing clickwrap agreement under Florida and New York law); *Hancock v. AT&T Co.*, 701 F.3d 1248, 1256 (10th Cir. 2012) (applying Florida law and observing that "[c]lickwrap agreements are increasingly common and 'have been routinely upheld'") (citation omitted).

Here, before using Chase's Online Service, both KPA and A&B were required to and did affirmatively assent to the Online Agreement by clicking separate boxes acknowledging that they had read and accepted the Online Agreement.   Sergi Decl. ¶¶ 3-4.  By clicking these boxes, Plaintiffs not only confirmed they had read and agreed to the Online Agreement, but again confirmed their agreement to the DAA, which the Online Agreement incorporates by reference.

---

[10] The Second Circuit in *Meyer* applied California law principles of contract formation, but noted that "New York and California apply substantially similar rules for determining whether the parties have mutually assented to a contract term."  868 F.3d at 74 (internal quotation marks and citation omitted).  *Meyer* has also been cited by Florida courts for its discussion of the applicable standard.  *E.g., MetroPCS Communs., Inc. v. Porter*, 273 So. 3d 1025, 1028-29 (Fla. Dist. Ct. App. 2018) (holding under Florida law that "[t]he key issues in most cases involving electronic contract formation is notice and manifestation of assent," and concluding that "[h]ere notice that terms and conditions applied was conspicuous," citing *Meyer* and other Second Circuit authority).

*Id.* Ex. C § 9.  Like a signature on a traditional contract, the affirmative "click" on such a box

functions as both (a) an acknowledgement of the contract containing the arbitration provision, and

(b) an unambiguous manifestation of assent thereto.[11]

### B.     The DAA And Online Agreement Delegate Questions Of Scope And Enforceability To The Arbitrator

It is well-settled that "parties may delegate threshold arbitrability questions to the

arbitrator, so long as the parties' agreement does so by 'clear and unmistakable evidence.'"  *Henry*

*Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (district court was not

permitted to ignore agreement delegating arbitrability question to arbitrator based on court's

conclusion that question was "wholly groundless").  Both this Court and numerous others in New

York and Florida have held that references to AAA or JAMS rules constitute clear and

unmistakable evidence that the parties intended to delegate arbitrability questions to the arbitrator.

*See, e.g.*, *Arshad*, 183 F. Supp. 3d at 447 ("The Second Circuit has repeatedly held this

arrangement [incorporation of AAA rules] to clearly and unmistakably indicate the parties' intent

---

[11] *See, e.g.*, *Sultan v. Coinbase*, 354 F. Supp. 3d 156, 161 (E.D.N.Y. 2019) (compelling arbitration where plaintiff was required to and did click a check box indicating he agreed to user agreement, reasoning that "[t]he explicit acceptance required here is an even clearer signal [than implicit acceptance] that a Coinbase account would be subject to terms and conditions, and an even stronger prompt to a reasonably prudent user to click on the link to see what those terms and conditions were before agreeing"); *Worthington*, 2019 WL 4933635, at *2 (applying New York and Florida law and compelling arbitration based, on plaintiffs' affirmative act of "click[ing] a checkbox next to the phrase 'I ACCEPT THE TERMS AND CONDITIONS OF THE MEMBERSHIP AGREEMENT'"); *Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 544-45, 548-49 (S.D.N.Y. 2018) (plaintiffs were bound by arbitration provision where they were required, *inter alia*, to check box with the text "'I agree to the terms and conditions of the updated Terms of Service'" containing the arbitration provision, notwithstanding that screen "did not directly refer to the arbitration provision"); *Mallh v. Showtime Networks Inc.*, No. 17-CV-6549, 2017 WL 5157247, at *4 (S.D.N.Y. Nov. 7, 2017) (plaintiff gave "unambiguous consent" to be bound when he "click[ed] on a box indicating that he had read and agreed to the TOU," which contained the arbitration provision); *Whitt v. Prosper Funding LLC*, No. 15-CV-136, 2015 WL 4254062, at *4 (S.D.N.Y. July 14, 2015) (holding that plaintiff assented to arbitration provision by "click[ing] a box adjacent to the bolded text 'Clicking the box below constitutes your acceptance of … the borrower registration agreement'") (emphases omitted); *see also Hancock*, 701 F.3d at 1256 (affirming dismissal of claims based on arbitration clause, holding that "basic contract law principles in Florida … indicate that if a clickwrap agreement gives a consumer reasonable notice of its terms and the consumer affirmatively manifests assent to the terms, the consumer is bound by the terms").

to delegate the issue of arbitrability to an arbitrator …. [and] [t]he same result obtains here.").[12]

Here, both the DAA and Online Agreement expressly reference the JAMS and AAA rules and provide that those rules will govern any arbitration.  *See* Deck Decl. Ex. D at 24; Sergi Decl. Ex. C § 12.  The JAMS and AAA rules, in turn, make clear that questions of arbitrability are delegated to the arbitrator.  *See* Rule 11(b), *JAMS Comprehensive Arb. Rules & Proc.*, JAMSADR.com (July 1, 2014),  https://www.jamsadr.com/rules-comprehensive-arbitration/#Rule-11 ("The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter."); Rule R-7(a), *AAA Com. Arb. Rules & Mediation Proc.*, https://www.adr.org/sites/default/files/CommercialRules_Web.pdf ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.").

Additionally, the Online Agreement states that the "binding arbitration provision" applies to "any and all Claims regarding the applicability of this arbitration clause or the validity of the Agreement, in whole or in part."  Sergi Decl. Ex. C § 12.  This language further "clearly and unmistakably" shows that the parties intended to delegate issues concerning the scope or enforceability of the provision to the arbitrator.  *See, e.g.*, *Bethune v. LendingClub Corp.*, No. 16-CV-2578, 2017 WL 462287, at *2-3 (S.D.N.Y. Jan. 30, 2017) (Buchwald, J.) (under New York law, arbitration provision "explicitly delegated questions of arbitrability to the arbitrator" where it

---

[12] *See also Emilio v. Sprint Spectrum L.P.*, 508 F. App'x 3, 5 (2d Cir. 2013) ("the parties clearly and unmistakably delegated questions of arbitrability to the arbitrator" by referencing JAMS rules); *Alderson v. deVere USA, Inc.*, No. 18-CV-5081, 2018 WL 3756451, at *2-3 (S.D.N.Y. July 24, 2018) (references to JAMS and AAA rules indicated intent to delegate arbitrability issues); *Reunion W. Dev. Partners, LLLP v. Afranio Sanford Guimaraes*, 221 So. 3d 1278, 1280 (Fla. 5th Dist. Ct. App. 2017) (agreeing with Second Circuit authority that when "'parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability [there, the AAA rules], the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator'") (citation omitted); *Glasswall, LLC v. Monadnock Constr., Inc.*, 187 So. 3d 248, 251 (Fla. 3d Dist. Ct. App. 2016) (similar); *Shea v. BBVA Compass Bancshares, Inc.*, No. 12-CV-23324, 2013 WL 869526, at *4 (S.D. Fla. Mar. 7, 2013) (question of scope was for the arbitrator where arbitration provisions in deposit agreement and online banking agreement referenced AAA and JAMS rules).

included within the definition of "Claim[s]" all disputes "'relating to or arising out of this Agreement, … including … the validity or enforceability of this Arbitration Provision'"). Accordingly, any issues of scope or enforceability are for the arbitrator to decide.

### C. Even If The Court Reaches The Issue Of Scope, Plaintiffs' Claims Are Covered

Even if this Court were to consider the question of scope (and it should not), arbitration would still be required because Plaintiffs' claims against Chase (and necessarily its parent JPMorgan Chase & Co.) fall squarely within the scope of the two arbitration provisions. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."); *AT&T Techs. v. Commc'ns Workers*, 475 U.S. 643, 650 (1986) ("[T]here is a presumption of arbitrability in the sense that 'an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'") (alterations and citation omitted); *Alghanim v. Alghanim*, 828 F. Supp. 2d 636, 653 (S.D.N.Y. 2011) (Buchwald, J.) (same).

This Court has previously instructed that "[t]o determine whether a dispute falls within the scope of an agreement's arbitration clause, a court should first classify the clause as either broad or narrow." *National Union Fire Ins. Co. v. Champps Entm't, Inc.*, No. 04-CV-6163, 2004 WL 2884304, at *2 (S.D.N.Y. Dec. 13, 2004) (Buchwald, J.). In making this determination, "the Court must determine whether the language of the clause, taken as a whole, evidences the parties' intent to have arbitration serve as the primary recourse for disputes connected to the agreement containing the clause or if, on the other hand, arbitration was designed to play a more limited role." *Dill*, 2020 WL 4345755, at *6 (internal quotation marks and citation omitted). "A broad arbitration clause gives rise to a presumption of arbitrability and requires arbitration of even a collateral matter

20

if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *National Union Fire*, 2004 WL 2884304, at *2 (internal quotation marks, alterations, and citation omitted).  Put differently, "[i]f the allegations underlying the claims ***touch*** matters covered by the parties' contracts, then those claims must be arbitrated, whatever the legal labels attached to them." *Alghanim*, 828 F. Supp. 2d at 653 (emphasis added, internal quotation marks and citation omitted).

Here, the arbitration provisions in the DAA and Online Agreement are "'paradigm[atic] of a broad clause.'"  *Id.* at 652 (citation omitted) (compelling arbitration where arbitration clause covered "'[a]ny claim or controversy arising out of or relating to th[e] agreement'").[13]  The DAA covers, among other things, "any claims or disputes arising from or relating to this agreement" and "any dispute relating in any way to your account and transactions," including any "[c]laims or disputes between you and us about your deposit account, transactions involving your deposit account, safe deposit box, and any related service with us."  Deck Decl. Ex. D at 23-24.  Courts that have considered the arbitration provision in the DAA have confirmed that it is "broad," and ordered arbitration of disputes between Chase and its customers/account holders.  *See, e.g.*, *Dill*, 2020 WL 4345755, at *6 (concluding that the "language of the DAA's arbitration provision is indisputably broad" and thus "create[s] a strong presumption of arbitrability"); *Sunmonu*, 2019 WL 1258788, at *2 (the DAA "defines arbitrable claims broadly"); *see also Haenel v. Wash. Mut. Bank*, No. 07-CV-2320, 2007 WL 4326828, at *3 (E.D.N.Y. Dec. 6, 2007) (observing that

---

[13] *See also Gaul v. Chrysler Fin. Servs. Ams. LLC*, 657 F. App'x 16, 17 (2d Cir. 2016) (concluding that arbitration provision covering "'any claim or dispute … which arises out of or relates to [the] Lease or any resulting transaction or relationship arising out of [the] Lease'" was broad); *Getz v. Verizon Communs., Inc.*, No. 18-CV-4652, 2018 WL 5276426, at *2 (S.D.N.Y. Oct. 24, 2018) (clause covering "'any dispute that in any way relates to or arises … from any equipment, products, or services you receive from [Verizon]'" was "sufficiently broad to create a strong presumption of arbitrability"); *Watson v. USA Today Sports Media Grp.*, LLC, No. 17-CV-7098, 2018 WL 2316634, at *2 (S.D.N.Y. May 8, 2018) (Buchwald, J.) (compelling arbitration where arbitration cause provided that "'[a]ny dispute arising under this Agreement shall be'" arbitrated).

language providing that parties "'must arbitrate any dispute concerning'" the plaintiff's checking account "has been characterized as [] broad" and "justif[ies] a presumption in favor of arbitration"). The Online Agreement, which covers any dispute arising "UNDER OR RELATING IN ANY WAY TO THIS AGREEMENT, OR TO THE ONLINE SERVICE," *see* Sergi Decl. Ex. C § 12, should be treated in equivalent fashion.

As the language in both arbitration provisions is broad, KPA and A&B's allegations easily fall within their scope and should be arbitrated. *See Dill*, 2020 WL 4345755, at *6 ("The characterization of the language in the DAA's arbitration provision as broad is significant, because it means that even collateral issues—that is, issued *related to* but not facially covered by the arbitrable subject matter—should be arbitrated") (emphasis in original, internal quotation marks and citation omitted). The dispute here plainly arises out of and relates to Plaintiffs' accounts with Chase and "any related service" because, but for those accounts, Plaintiffs would not and could not have applied for a PPP loan through Chase. Plaintiffs concede that they chose to submit PPP loan applications with Chase because it is their "regular business bank," in which they maintain business checking accounts. *See* Compl. ¶¶ 50, 68. Indeed, Plaintiffs were only *eligible* to apply for PPP funding with Chase by virtue of their status as Chase accountholders subject to the DAA. *See* Reynolds Decl. ¶ 4; PPP FAQs. PPP funding also qualifies as a transaction on a Chase customer's account. When KPA's PPP loan application was approved, the PPP funds were deposited directly into its checking account. Compl. ¶ 54. And A&B's alleged injury (the supposed inability to obtain a timely PPP loan) impacted its checking account because that is where PPP loan proceeds were to have been deposited. *See* Reynolds Decl. ¶ 3.

Moreover, Plaintiffs acknowledge that they applied for PPP funding using Chase's "online portal." *See* Compl. ¶¶ 6, 42, 48, 59, 67-68; *see also* Sergi Decl. ¶¶ 2-4. The submission of the

online applications certainly relates to the Online Agreement or the Online Service.

In short, Plaintiffs' own Complaint concedes that their Chase PPP loan applications had to involve their use of Chase accounts and online services, and occurred only because of their status as Chase accountholders.  To the extent the Court considers whether Plaintiffs' claims fall within the scope of the arbitration provisions in the DAA and Online Agreement, it should hold that they do.

## II.    THIS ACTION SHOULD BE STAYED PENDING ARBITRATION

Where, as here, claims must be arbitrated and a stay is requested, the FAA mandates that the court "***shall*** … stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3 (emphasis added).  Indeed, the Second Circuit has held that this provision "creates an obligation impervious to judicial discretion," and "command[s]" that "a stay of proceedings [is] necessary after all claims have been referred to arbitration and a stay requested." *Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015) (internal quotation marks and citation omitted).  The Court should therefore stay all further proceedings against Chase until Plaintiffs and Chase complete the separate arbitrations.  *See, e.g.*, *Dill*, 2020 WL 4345755, at *8 (staying case pending arbitration in accordance with DAA); *Johnson*, 2018 WL 4726042, at *9 (same); *Watson*, 2018 WL 2316634, at *6 (Buchwald, J.) (staying action pending arbitration upon finding that plaintiff's claims fell within broad scope of arbitration clause); *Bethune*, 2017 WL 462287, at *4 (Buchwald, J.) (staying case pending arbitration where parties delegated arbitrability question to arbitrator); *Arshad*, 183 F. Supp. 3d at 447-48 (Buchwald, D.J.) (same); *Alghanim*, 828 F. Supp. 2d at 664 (Buchwald, J.) (staying action following determination that claims were arbitrable).

## **CONCLUSION**

For all of the foregoing reasons, this Court should enter an order (i) compelling Plaintiffs to separately arbitrate their claims on an individual basis, and (ii) staying this action pending completion of the individual arbitration proceedings.

Dated:  September 25, 2020
        New York, New York

Respectfully Submitted,

GREENBERG TRAURIG, LLP

By:   /s/ Sylvia E. Simson
        Sylvia E. Simson
        Keith Hammeran
        Noah Lindenfeld

MetLife Building
200 Park Avenue
New York, New York 10166
Tel: (212) 801-9200
Fax: (212) 801-6400
simsons@gtlaw.com
hammerank@gtlaw.com
lindenfeldn@gtlaw.com

*Attorneys for Specially Appearing Defendant JPMorgan Chase & Co. and Defendant JPMorgan Chase Bank, N.A.*