UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
KPA PROMOTION & AWARDS, INC.,
and ABOVE & BEYOND PRESCHOOL,
LLC, individually and on behalf
of all others similarly
situated,

                Plaintiffs,

        - against -

JPMORGAN CHASE & CO., and
JPMORGAN CHASE BANK, N.A.,

                Defendants.

------------------------------X

**MEMORANDUM AND ORDER**

20 Civ. 3910 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


      Plaintiffs KPA Promotion & Awards, Inc. ("KPA") and Above & Beyond Preschool, LLC ("A&B") are banking customers of defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. (together, "Chase") who applied for federally guaranteed Paycheck Protection Program ("PPP") loans from Chase. KPA ultimately received a loan which was backdated by several weeks while A&B's application was denied. In their complaint, filed on May 19, 2020, plaintiffs allege that Chase improperly favored commercial and private banking clients over its small business banking customers and assert various claims under the New York General Business Law §§ 349, 350 for deceptive practices and false advertising and the Florida Deceptive and Unfair Trade Practices Act. Plaintiffs further raise claims of fraudulent concealment, breach of

fiduciary duty, and negligence.  ECF No. 1.  Chase now moves to
compel arbitration and stay this action.  For the following
reasons, Chase's motion is granted.

BACKGROUND[1]

### 1. The Arbitration Provisions

Plaintiffs are two businesses primarily located in Florida.
Class Action Complaint, ECF No. 1 (the "Complaint" or "Compl.")
¶¶ 13-14.  KPA offers promotional and logoed products, and A&B is
a preschool.  <u>Id.</u>  Years before the pandemic, both plaintiffs
opened banking accounts with Chase.  Declaration of Ian F. Fidler
("Fidler Decl."), ECF No. 37, ¶¶ 2-5; Declaration of Sita Ragbir
("Ragbir Decl."), ECF No. 38, ¶¶ 2-3.  Upon opening their accounts,
plaintiffs were required to sign a "signature card," wherein they
agreed to be bound by the terms and conditions contained in the
Deposit Account Agreement ("DAA") as amended from time to time.
Fidler Decl., Exs. A & B; Ragbir Decl., Ex. B.  The DAA contained
the following arbitration provision:

> You and we agree that upon the election of
> either of us, any dispute relating in any way
> to your account or transactions will be
> resolved by binding arbitration as discussed
> below, and not through litigation in any court

---

[1]     The facts herein are derived from plaintiffs' Class Action Complaint,
ECF No. 1, and the declarations submitted by the parties in connection with
Chase's motion to compel arbitration.  <u>See</u> <u>Meyer v. Uber Techs., Inc.</u>, 868
F.3d 66, 74 (2d Cir. 2017) (internal quotation marks omitted) ("Courts
deciding motions to compel [arbitration] . . . consider[] all relevant,
admissible evidence submitted by the parties and contained in pleadings,
depositions, answers to interrogatories, and admissions on file, together
with affidavits.").

> (except for matters in small claims court).
>
> This arbitration agreement is entered into pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA").

Declaration of Laura L. Deck ("Deck Decl."), ECF No. 36, Ex. D at

23.  The DAA further explains that:

> Claims or disputes between you and us about your deposit account, transactions involving your deposit account, safe deposit box, and any related service with us are subject to arbitration.  Any claims or disputes arising from or relating to this agreement, any prior account agreement between us, or . . . the approval or establishment of your account are also included.  Claims are subject to arbitration, regardless of what theory they are based on or whether they seek legal or equitable remedies.  Arbitration applies to any and all such claims or disputes, whether they arose in the past, may currently exist or may arise in the future.  All such claims or disputes are referred to in this section as "Claims."

Id. at 24.  The DAA also contains a right to opt out of arbitration if Chase is notified within 60 days of the opening of an account, but neither KPA nor A&B exercised that option.  Id. at 24; Declaration of William A. Garrett, ECF No. 41, ¶¶ 2-3.

In addition, when plaintiffs initially opened accounts on Chase's online system (the "Online Portal") connected to their banking accounts, they confirmed their acceptance of Chase's Online Services Agreement (the "Online Agreement").  Declaration of Nicholas Sergi ("Sergi Decl."), ECF No. 39, ¶ 3.  The Online Agreement states:

This Online Service Agreement ("Agreement") states the terms and conditions that govern your use of Chase Online℠, Chase Mobile®, Chase Pay®, Chase Online for Business Banking, and J.P. Morgan Online and any applicable software products and associated documentation we may provide through those websites and mobile applications, or to use the products, services or functionality offered through those websites and mobile applications, ("Software") and certain third party digital platforms as determined by us from time to time (collectively, the "Online Service").

Sergi Decl., Ex. C § 1.  Like the DAA, the Online Agreement also contains an agreement to arbitrate:

YOU HEREBY AGREE THAT ANY DISPUTE, CLAIM OR CONTROVERSY ARISING NOW OR IN THE FUTURE UNDER OR RELATING IN ANY WAY TO THIS AGREEMENT, OR TO THE ONLINE SERVICE ("CLAIM"), REGARDLESS OF THE NATURE OF THE CAUSE(S) OF ACTION ASSERTED (INCLUDING CLAIMS FOR INJUNCTIVE, DECLARATORY, OR EQUITABLE RELIEF), SHALL BE RESOLVED BY BINDING ARBITRATION. . . .  YOU FURTHER AGREE THAT YOU WILL NOT BE ABLE TO BRING A CLASS ACTION OR OTHER REPRESENTATIVE ACTION . . . TO LITIGATE ANY CLAIMS IN COURT BEFORE EITHER A JUDGE OR JURY; NOR WILL YOU BE ABLE TO PARTICIPATE AS A CLASS MEMBER IN A CLASS ACTION OR OTHER REPRESENTATIVE ACTION IN ARBITRATION OR IN COURT BEFORE EITHER A JUDGE OR JURY. . . .  This binding arbitration provision applies to any and all Claims that you have against us . . . or that we have against you; it also includes any and all Claims regarding the applicability of this arbitration clause or the validity of the Agreement, in whole or in part.  It is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. sections 1-16, as it may be amended.

-4-

<u>Id.</u> § 12.

### 2. Plaintiffs' Applications for PPP Funding

In response to the Covid-19 pandemic and the accompanying financial downturn experienced by millions of businesses, Congress passed the Coronavirus Aid, Relief, and Economic Security ("CARES") Act in March of 2020.  Compl. ¶ 21.  The CARES Act created a number of economic programs to provide financial assistance to Americans, including $349 billion to the U.S. Small Business Administration ("SBA") to make forgivable loans available through the PPP to qualifying businesses harmed by the pandemic. <u>Id.</u> ¶ 22.  While the loans were guaranteed by the federal government, businesses had to apply through private banks.  <u>Id.</u> ¶ 28.  Chase was an approved SBA lender and as such was required to "service and liquidate all covered loans made under the [PPP] in accordance with PPP Loan Program Requirements," which included processing applications for PPP loans on a first-come, first-served basis.  <u>Id.</u> ¶ 24.[2]

Lenders of PPP loans earned varying percentages of origination fees based on the amount of the loan: five percent on loans not more than $350,000; three percent on loans between $350,000 and $2,000,000; and one percent on loans over $2,000,000.

---

[2]     <u>See also</u> Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20,813 (Apr. 15, 2020) (to be codified at 13 C.R.F. pt. 120).

Id. ¶ 36.

Plaintiffs allege that in violation of the PPP Loan Program Requirements, and contrary to its own representations, Chase gave preferential treatment to commercial and private banking clients over its small business banking customers in order to profit from the higher origination fees obtainable from larger loans.  Small business banking customers had to apply for loans through Chase's Online Portal and then had to wait for a call from Chase's representatives for further assistance.  Id. ¶ 42.  In contrast, private or commercial banking customers were assigned to employees who provided them with "concierge treatment," allowing them to bypass the queue set up for small business banking customers.  Id.[3]

Plaintiffs submitted applications for PPP loans with Chase using the Online Portal.  Id. ¶ 50.  KPA's application was approved, and the loan funds were deposited into KPA's account on April 30, 2020, though Chase backdated the deposited funds to April 7, 2020, thereby allegedly limiting the amount of time by which KPA could use the funds by 23 days.  Id. ¶¶ 54, 56-57.  A&B submitted two applications, which were both denied.  Id. ¶¶ 68-70.[4]

---

[3]    As a result, plaintiffs allege that while nearly all of Chase's 8,500 commercial and private banking clients who applied received a loan through the PPP, only 18,000 of the more than 300,000 small business banking customers received one in contravention of the "first-come, first-served" requirement.  Id. ¶¶ 41, 43.
[4]    Curiously, while not mentioned in the Complaint or in plaintiffs' opposition, it appears from public records that A&B was able to secure a PPP loan for $60,000 from another lender even before the filing of plaintiffs'

**DISCUSSION**

**1. Legal Standard**

Under the Federal Arbitration Act (the "FAA"), "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The FAA reflects "a liberal federal policy favoring arbitration agreements," AT & T Mobility LLC v. Concepcion, 563 U.S. 333, 346 (2011) (internal quotation marks omitted). "Courts must rigorously enforce arbitration agreements according to their terms." Am. Exp. Co. v. Italian Colors Rest., 570 U.S. 228, 228 (2013) (internal quotation marks omitted). Yet because "the obligation to arbitrate nevertheless remains a creature of contract," "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 224 (2d Cir. 2001) (internal quotation marks omitted).

In determining whether a claim falls within the scope of a mandatory arbitration clause, there is a general presumption that

---

complaint. See PPP Loan Data – Above and Beyond Preschool, LLC, FederalPay.org, https://www.federalpay.org/paycheck-protection-program/above-and-beyond-preschool-llc-royal-palm-beach-fl. This impactful information should have been furnished by counsel and not learned as a result of the Court's independent research. Regardless of whether this omission rises to the level of sanctionable conduct, the Court finds it extremely troubling and believes that an explanation is owed both to the Court and to Chase. The Court expects that explanation to be submitted promptly.

courts, not arbitrators, decide issues of arbitrability. <u>Telenor</u>
<u>Mobile Commc'ns AS v. Storm LLC</u>, 584 F.3d 396, 406 (2d Cir. 2009).
However, this presumption is rebutted with "clear and unmistakable
evidence from the arbitration agreement, as construed by the
relevant state law,[5] that the parties intended that the question
of arbitrability shall be decided by the arbitrator." <u>Contec Corp.</u>
<u>v. Remote Solution, Co.</u>, 398 F.3d 205, 208 (2d Cir. 2005) (emphasis
removed) (internal quotation marks omitted).    "Clear and
unmistakable evidence exists when an arbitration clause explicitly
delegates arbitrability determinations to the arbitrator, or when
it incorporates by reference arbitration rules that do so." <u>Arshad</u>
<u>v. Transportation Sys., Inc.</u>, 183 F. Supp. 3d 442, 446 (S.D.N.Y.
2016) (citing <u>Contec Corp.</u>, 398 F.3d at 208).

## 2. Analysis

Chase has established (and plaintiffs do not contest) that
plaintiffs agreed to the terms of the DAA and Online Agreement
when they opened accounts with Chase.   Fidler Decl., Exs. A & B;
Ragbir Decl. Ex. A; Sergi Decl. ¶¶ 3-4; <u>see also</u> <u>Valelly v. Merrill</u>
<u>Lynch, Pierce, Fenner & Smith Inc.</u>, 464 F. Supp. 3d 634, 640
(S.D.N.Y. 2020) (quoting <u>Meyer</u>, 868 F.3d 66 at 75) ("The Second
Circuit routinely enforces clickwrap agreements as valid and

---

[5]      In its motion, Chase argues that the interpretation of the DAA and
Online Agreement results in the same conclusions whether applying either
Florida or New York law.  As neither party raises concerns as to choice of
law, we will analyze the agreements under New York law.

binding contracts, 'for the principal reason that the user has affirmatively assented to the terms of agreement by clicking "I agree."'"). Both provide that Chase may update the terms of the DAA from time to time, and Chase notified plaintiffs each time it did so. Deck Decl. ¶ 7; Sergi Decl. ¶ 5. Chase also provides the versions of the DAA and Online Agreement in effect at the time that plaintiffs' complaint was filed, which contain the arbitration provisions as quoted above. Deck Decl., Ex. D; Sergi Decl., Ex. C. Plaintiffs do not suggest any argument whatsoever that they were in fact not bound by the terms of the arbitration clauses at the time periods relevant to this action.[6]

Rather, plaintiffs primarily argue that claims arising from Chase's lending practices, and particularly claims arising out of Chase's PPP lending practices, fall outside the scope of the arbitration provisions of the DAA and Online Agreement.[7] However,

---

[6]    Plaintiffs try to argue that Chase failed to establish which version of the agreements govern and attempt to liken their case to Mayfield v. Asta Funding, Inc., 95 F. Supp. 3d 685, 694 (S.D.N.Y. 2015). That case, however, is completely inapposite. There, the plaintiff disputed ever entering into an agreement to arbitrate with the defendant, and the defendant could not produce the agreement between the parties, and instead provided eighteen sample contracts between the defendant and third parties. Here, plaintiffs not only acknowledged entering into the DAA and Online Agreements but fail to even point to any material differences in the versions of the agreements provided by Chase.
[7]    Plaintiffs wisely do not argue that their putative class action renders arbitration inappropriate. The Supreme Court has foreclosed on that argument, see AT&T Mobility LLC, 563 U.S. at 351, and in any event, it is far from clear that a class would be certified regardless of forum. Cf. In re JPMorgan Chase Paycheck Prot. Program Litig., 481 F. Supp. 3d 1342, 1344 (U.S. Jud. Pan. Mult. Lit. 2020) (denying consolidation of cases regarding Chase's PPP lending practices and opining that "it appears that individualized factual issues concerning the circumstances of each loan

the resolution of this issue is for the arbitrator because here, there is "clear and unmistakable evidence . . . that the parties intended that the question of arbitrability shall be decided by the arbitrator." Contec Corp., 398 F.3d at 208.  Both the DAA and Online Agreement state that a party must submit its claim to either Judicial Arbitration and Mediations Services ("JAMS") or the American Arbitrations Association ("AAA") and that their procedures will apply.  Deck Del., Ex. D at 24; Sergi Decl., Ex. C § 12.  Those procedures in turn grant the arbitrator the power to rule on his or her own jurisdiction and the arbitrability of the issues presented.  AAA Commercial Arbitration Rules, R-7(a); JAMS Comprehensive Arbitration Rule 11.  "The Second Circuit has repeatedly held this arrangement to clearly and unmistakably indicate the parties' intent to delegate the issue of arbitrability to an arbitrator." Arshad, 183 F. Supp. 3d at 447 (S.D.N.Y. 2016) (citing cases).[8]

Not only do the referrals to AAA and JAMS compel the result

---

application will significantly diminish the potential efficiencies from centralization").

[8]    Indeed, plaintiffs admit this point.  See ECF No. 4 at 15 ("[C]ourts generally consider the inclusion of the American Arbitration Association's (AAA) arbitration provisions in an agreement to arbitrate to be 'clear and unmistakable' evidence that parties intend to arbitrate arbitrability."). Nonetheless, plaintiffs argue that the DAA and Online Agreements do not apply because Chase failed to mention these agreements in communications with plaintiffs concerning PPP loans.  However, this does not change the fact that plaintiffs remained bound by those agreements, and in any event, "[t]here is no implied contractual duty to remind parties of their obligations." Russo v. Banc of Am. Sec., LLC, No. 05 Civ. 2922, 2007 WL 1946541, at *6 (S.D.N.Y. June 28, 2007).

reached but, independently, the language of the arbitration provisions do as well. Specifically, the Online Agreement expressly provides that any claim "regarding the applicability of this arbitration clause" is subject to arbitration, and both the DAA and Online Agreement define claims subject to arbitration to include "any" claims or disputes, whether arising in the present or future, related "in any way" to the agreements. "[T]his type of broad language provides the necessary clear and unmistakable evidence that, here, arbitrability is for the arbitrator to decide." Bethune v. Lendingclub Corp., No. 16 Civ. 2578, 2017 WL 462287, at *3 (S.D.N.Y. Jan. 30, 2017).

Accordingly, plaintiffs must, in the first instance, raise their objections concerning the scope of the arbitration provisions before the arbitrator.[9] See Hyde-Edwards Salon & Spa v. JP Morgan Chase & Co., No. 20 Civ. 762, 2020 WL 6871050, at *2 (S.D. Cal. Nov. 23, 2020) (finding the issue of arbitrability of similar claims to plaintiffs' here was a question for the

---

[9]     Were the Court to address the scope of the arbitration provisions, it likely would not be persuaded by plaintiffs' objections. Plaintiffs argue that the DAA and Online Agreements generally do not relate to the loan application process and therefore do not cover plaintiffs' claims concerning their applications for PPP funding. However, the suggestion that the arbitration provisions exclude loans in the context of business accounts is problematic. Moreover, the circumstances of plaintiffs' application through Chase's Online Portal for funding, where, after approval, those funds would be deposited into plaintiffs' checking accounts, ECF. No. 48 at 2, would seem clearly to "relat[e] in any way to [plaintiff's] account[s] or transactions" with Chase and likewise implicate the "use . . . [of] services . . . offered through [Chase's] websites." The arbitration provisions of the DAA and Online Agreement are plainly broad enough to encompass plaintiffs' claims.

arbitrator under Chase's DAA and Online Agreement).

**CONCLUSION**

For the foregoing reasons, Chase's motion to compel arbitration and stay this action is GRANTED.[10]  The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 34 and to mark this case as stayed.  Chase is directed to file a brief letter every 60 days from the date of this Order informing the Court of the status of the arbitration.

**SO ORDERED.**

Dated:     New York, New York
           April 8, 2021

_____
          NAOMI REICE BUCHWALD
          UNITED STATES DISTRICT JUDGE

---

[10]     As Chase was the only party to request oral argument and as it has prevailed on its motion, the Court concludes that oral argument would not be productive.